UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Cr. No. 26-169-KD |
| | ) | |
| EDWARD LEE FRITH, | ) | |
| Defendant. | ) | |

MOTION TO REVOKE DETENTION ORDER

NOW COMES the Defendant and moves the court pursuant of 18 U.S.C. §3145(b) to revoke the United States Magistrate's September 28, 2026 detention order (doc. 16) and order release on conditions. As grounds for this motion the defendant would show:

Under 18 U.S.C. §3145(b) the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary. *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988). The defendant requests an evidentiary hearing. Factors that bear on whether a defendant should be released or detained pending trial include: (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence," 18 U.S.C. §3142(g)(1); (2) "the weight of the evidence against" the defendant, §3142(g)(2); (3) the defendant's "history and characteristics," such as his or her "character, physical and mental condition, family ties, employment,

financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," §3142(g)(3); and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," §3142(g)(4). The government bears the burden of showing by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant poses a danger to the community. See *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985)

*Nature and circumstances of the offense and weight of the evidence*

According to FBI agent Bryan Engle's testimony at the detention hearing, the defendant made the threatening statements over a five minute period while he was playing Fortnite, a hugely popular on-line shooter and survival fantasy game in which up to four players use weapons to fight off zombie-like creatures and defend objects with traps and fortifications they can build. The agent testified that IP addresses associated with Frith logged on to the fantasy game about 1,700 times over a seven year period. The government produced no evidence at the hearing, or in discovery to date, that Frith ever made any other threats, either in past gaming sessions, or in any other manner.

The agent testified the only evidence of threats was contained in a September 20, 2026 audio clip received from Epic Games, which produces Fortnite. SA Engel testified that he did not know what fantasy scenes appeared on the video screen at the time the audio was recorded; that he did not know the identity other players in the game, or what – if anything – was said by third parties during the lengthy gaps in the audio recording. The recording played at the detention hearing was only Frith's side of what may have been a monologue or a dialogue. He did not know if the recording of the clip was initiated by an algorithm or a person. A thumb drive of the five minute audio recording is submitted with this motion as Exhibit 1.

The First Amendment's freedom of speech clause protects even disturbing and threatening speech, and excludes from its protection only those statements which constitute "true threats." The "true threat" subset of communications is limited to those statements which convey a "serious expression" that a speaker means to "commit an act of unlawful violence." *Virginia v. Black*, 538 U. S. 343, 359 (2003) Whether a statement is a true threat "depends not on 'the mental state of the author,' but objectively on 'what the statement conveys' to the person on the receiving end." *Counterman v. Colorado*, 600 U.S. 66, (2023) citing *Elonis v. United States*, 575 U. S. 723, 733 (2015) The Eleventh Circuit's §875(c) pattern jury instruction clarifies that whether a statement is a "true threat" depends on the

context in which it is made. A true threat "is a serious threat – not idle talk, a careless remark, or something said jokingly – that is *made under circumstances* that would place a reasonable person in fear" that he or another person would be injured. O30.3 (emphasis supplied) It will be for a jury to determine whether the statements Frith uttered in the "Fornite" fantasy milieu, where he was gaming under the user name "Wages of Ninja," are the type of violent, but constitutionally protected, commentary typically used by keyboard warriors when fighting zombies, or are unprotected "true threats" which would place a reasonable person who is aware of the context in fear of injury.

It is significant that among the circumstances to be used to evaluate whether a "true threat" exists is the fact that Frith apparently played the fantasy game 1,700 times over seven years without complaint. A §875(c) offense does not require proof that the defendant intended to carry out a true threat. However, the complete absence of proof of such intent, or of any history of other threats or violent conduct, is highly material to the court's evaluation of whether Frith should be denied the Eight Amendment right to bail. SA Byran testified at the detention hearing that Frith was peacefully arrested at his workplace and was cooperative with law enforcement. The body cam recording of the arrest bears this out.[1]

[1] The magistrate's order expresses concern about how Firth might interact with probation officers and court officers if released. This concern is not grounded in fact. He is 29 years old

In sum, the government's case depends on it proving beyond a reasonable doubt that an isolated instance of language uttered while playing a fantasy game by a person with no history of violence or r threats constitutes a "true threat." Frith has every incentive to abide by the terms of pretrial release. He is aware that the advisory sentencing guideline calculations prepared by the United States Probation office show a base offense level of 12 and no criminal of the history points. (docs. 22 and 23) It is not a foregone conclusion that the prosecution will result in conviction, and even then the consequences of conviction are not in the order of magnitude which is the norm in this court. He has been detained since September 23, 2026.

*The defendant's history and characteristics show he poses no danger or flight risk.*

The defendant is a 29 year old life-long resident of Foley, Alabama with only a GED and limited financial resources. He most recently worked for a landscaping company. He has never traveled outside the United States and does not have a passport. He will live at home with his mother and step-father if released on conditions. Both parents have affirmed their willingness to welcome him back.

---

and has no criminal record. Nothing in his background suggests he will be anything but compliant with the terms of release. He has had no problems over the past month of incarceration where he constantly interacts with corrections personnel. See the discussion of Alta Points' risk assessment, *infra*.

There are no weapons in the home and Frith does not own, use or possess a firearm.

The defendant has been an AltaPoint patient for several years. AltaPoint records were not available at the detention hearing, but were produced for the FBI on October 6, 2026, and to the defendant on October 14, 2026. The records are filed with this motion under seal as Exhibit 2. They show that Frith has been diagnosed with a major depressive disorder with psychosis, which Dr. Jon Olsen at AltaPoint has treated for several years. A May 20, 2025 mental status risk assessment found:

> Suicide Risk – Low – Patient reports past thoughts of death to escape perceived persecution, but no current suicidal ideation, plan, or intent. Depression with psychotic features present.
>
> Homicide Risk: None – No evidence of homicidal ideation, plan or intent. No history of violence towards others reported.
>
> (Ex. 2 FRITHSSS000136)

Dr. Olsen Frith saw at AltaPoint on April 8, 2026 and noted Frith objected to taking Abilify, a long acting injectable medication, because of the dulling effect it had on him. Dr. Olsen substituted Aripiprazol, an oral medication for the injectable, and noted that "[Frith] has made tremendous progress but unfortunately he is not able to recognize this himself …He would profoundly benefit from more frequent therapy sessions and he is open to this once available." (Ex. 2

FRITHSSS000149) At this visit Frith's suicide risk was again rated as low, homicide risk none. (*Id.* at FRITHSSS000152)

It appears that Dr. Olsen last saw Frith on May 6, 2026, when Frith reported he felt much better and had stopped taking medication. (FRITHSSS 000220) At this visit the suicide risk was again low, homicide risk was none. (*Id.* 000222) He missed a scheduled June 3, 2026 appointment (*Id.* 000225) and was not seen again prior to his arrest on September 23, 2026. As a result of detention Frith missed a scheduled October 6, 2026 appointment with Dr. Olsen and has not received the prescribed medication. Frith has been seen only once since detention. That was last week was by a physician's assistant at the Baldwin County Corrections Center.

The Magistrate did not have the AltaPoint records to consult at the time of the detention hearing. Edward Lee Frith needs to take prescribed medication and attend frequent therapy sessions. Nothing in the medical records, or in Frith's personal history, suggests that he poses a danger to himself or others. The court should order as a condition of release that Frith resume treatment and take medication as prescribed by Dr. Olsen.

The Magistrate's order notes that Frith admitted he used methamphetamine several years ago, and used marijuana daily until arrest. His candor about historical methamphetamine use suggests it is not a present issue. Frith knows he needs to

discontinue marijuana use, not only because it continues to be illegal in Alabama, but because it interferes with psychiatric treatment as noted in the records. The court should order as a release condition of release that he abstain from illicit drug use, reinforced by testing.

*Conclusion*

Edward Lee Frith is neither a flight risk nor a danger to the community. He will likely be out of custody and back in the community within a matter of weeks, regardless of the outcome of this case. It is to his benefit and to the advantage of the community that he immediately recommence mental health treatment and take the prescribed medication. The court should order his release under conditions of residence at his parents' home, continued employment, discontinuance of on-line gaming, drug abstention and testing, and mental health treatment.

/s/ Arthur J. Madden, III
Arthur J. Madden, III
MADDA0656
Attorney for Defendant
465 Dauphin Street
Mobile, Alabama 36602
(251) 432-0380

CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2026 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to AUSA Lauren Walsh.

/s/ Arthur J. Madden, III