**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 26-00169-KD-N** |
| | ) | |
| **EDWARD LEE FRITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

This action is before the Court on Defendant Edward Lee Frith's Motion to Revoke the Detention Order (Doc. 24). Upon consideration, for the reasons stated below, the Court will **DENY** the Motion to Revoke the Detention Order.

## I. BACKGROUND

Frith was indicted for the offense of interstate threatening communications. (See Doc. 7). The United States moved for pretrial detention of Frith. (See Doc. 6). The Magistrate Judge held a detention hearing and entered an order of detention pending trial, in which the Magistrate Judge found that "the [United States] has proven[] [b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" if Frith were not detained. (See Doc. 16).

## II. STANDARD OF REVIEW

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142, a defendant may be detained pending trial only after a hearing pursuant to 18 U.S.C. § 3142(f). "If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1).

"Pursuant to 18 U.S.C. § 3145, following a magistrate's order that a [defendant] be held without bond pending trial, the [defendant] may move the district court to revoke or amend the magistrate's pretrial detention order"; "in this situation, the district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention is necessary." United States v. King, 849 F.2d 485, 490 (11th Cir. 1988). Ordinarily, that "requires the court to exercise independent consideration of all facts properly before it and to include written findings of fact and a written statement of the reasons for the detention." United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987).

A district court need not "enter its own findings of fact . . . when a motion to revoke or amend a pretrial detention order attacks only the magistrate's legal conclusion . . . and no factual issues remain unresolved." King, 849 F.2d at 490. When the motion attacks the factual basis of the detention order, however, the district court must enter its own findings of fact. See id. Here, the motion identifies evidence that was not produced before the detention hearing and was thus not available for the Magistrate Judge to consider. (See Doc. 24 at 6–7). Consequently, the Court will enter its own findings of fact, including all evidence now available, and independently consider whether the facts warrant pretrial detention of Frith.

## III. FINDINGS OF FACT

Frith does not have any criminal history. (Doc. 16-1 at 1). Before his arrest, Frith was gainfully employed, (id.); and, when law-enforcement officers approached him at his workplace, Frith peacefully cooperated with them, (Doc. 24 at 4). Frith also has strong ties to his community, including his mother and stepfather, who have affirmed that they would welcome Frith back into their home—where they do not have any weapons that Frith could access—and keep an eye on him if he were released. (Doc. 16-1 at 1; accord Doc. 24 at 5). But Frith has sporadically absconded

from the family home and described himself as homeless. (Doc. 16-1 at 1). Moreover, it is unclear that living in the family home would discourage Frith from any potentially dangerous conduct, given that he allegedly made the threats underlying this action while living there. (Id.).

Furthermore, Frith candidly acknowledged that he used marijuana daily before his arrest, used methamphetamine several years ago, suffers from mental illness, and attempted suicide several years ago. (Doc. 16-1 at 2; accord Doc. 24 at 7–8). Specifically, Frith has been diagnosed with schizophrenia and PTSD, (Doc. 16-1 at 2), and a psychiatrist at AltaPointe Health has treated Frith for major depressive disorder with psychosis, (Doc. 24 at 6).

According to AltaPointe's records, Frith's psychiatrist prescribed him a new medication after an appointment in April, but Frith had stopped taking that medication by the time of his next appointment in May; Frith missed his next appointment in June, and AltaPointe's records betray no further trace of Frith before his arrest in September. (Doc. 24 at 6–7). Frith reports that he missed another appointment in October, and as a result did not receive his medication, due to his detention. (See Doc. 24 at 7). But, although his detention surely interfered with his ability to attend that appointment, the force of his explanation is deadened by the fact that Frith had already missed four months of appointments and stopped taking his medication before he was arrested.

Likewise, although AltaPointe determined in May that Frith had only a low risk of killing himself and no risk of killing anyone else, that determination was predicated upon Frith's report that he had "no current suicidal ideation, plan, or intent" and AltaPointe's observation that Frith displayed "[n]o evidence of homicidal ideation, plan[,] or intent." (Doc. 24 at 6). That may have been true at that time; since then, however, Frith has clearly articulated both suicidal and homicidal ideations, plans, and intentions. (See Doc. 1-1 at 3–4).

Frith tries to explain those statements away as "the type of violent, but constitutionally protected, commentary typically used by keyboard warriors when fighting zombies," which thus cannot constitute "true threats," (Doc. 24 at 4). But these were Frith's actual words:

- "Letting all my rage out because I want to literally murder somebody."
- "I think about it every day. Every day, I think about murdering somebody in cold blood, but I don't do it, because I like my freedom. I'd rather die than go to prison, I'll tell you that."
- "Yeah, I'm pretty sure that if I did get arrested for something like that, I'd probably end up killing a cop, and then I'd kill myself."
- "Let's see if the FBI is going to show up at my door, because I'll shoot them motherfuckers, too."
- "I'm going to become a murderer one day."
- "And I'm going to fucking kill people."
- "It's a fucking black cloud, a very specific person or small group of people who have chosen to try to make my life absolutely hell."
- "So one day I'm going to turn into that person just like the people you see on the fucking videos on YouTube, where they fucking run up to the police officer, and they have no reason to at all, and then they make the police kill them. I'm gonna be that guy."

(Doc. 1-1 at 3–4 (capitalization and punctuation added)).

As the Magistrate Judge noted, "[i]f Frith were released, he would be required to interact with probation officers and court officers, individuals among his specific intended stated targets in the specific settings [that] Frith said would cause him to act." (Doc. 16-1 at 2). Considering Frith's "clear 'everyday' intent to murder anyone in cold blood who stood between him and his freedom," the Magistrate Judge found that "[t]here is no condition [of release] available to address that level of dangerousness." (Id.).

## IV. REASONS FOR DETENTION

To determine whether adequate conditions of release can be crafted to reasonably assure public safety, the Court shall consider "(1) the nature and circumstances of the offense charged," "(2) the weight of the evidence against the [defendant]," "(3) the history and characteristics of the

[defendant]," and "(4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release." 18 U.S.C. § 3142(g).

First, Frith is charged with making a series of violent threats—articulating actionable plans to confront law-enforcement officers, murder them, and kill himself to avoid losing his freedom. That alone bodes against his release, and the charge rests on strong evidence: an audio recording of the exact words that Frith used to make those threats.

Second, contra Frith's argument that the United States will have a hard time persuading a jury "beyond a reasonable doubt that an isolated instance of language uttered while playing a fantasy game by a person with no history of violence or threats constitutes a 'true threat,'" (Doc. 24 at 5), a reasonable jury could very well find "true threats" in an audio recording of Frith describing his plans to murder specific people under specific circumstances.

Third, while Frith has demonstrated that he is capable of upstanding citizenship, he has also habitually absconded from his family home, blown off appointments with his psychiatrist, stopped taking his psychiatric medication without consulting his psychiatrist, and used marijuana and methamphetamine. Frith has been diagnosed with mental illnesses including schizophrenia, PTSD, and major depressive disorder with psychosis, which has in turn probably contributed to Frith's bad habits—a vicious cycle in which Frith's best efforts to look after his mental health are thwarted by the very same symptoms that he is trying to treat. Unfortunately, it may be more likely that Frith will receive consistent psychiatric treatment if he remains detained than if he is released.

Finally, as the Magistrate Judge noted, "[i]f Frith were released, he would be required to interact with probation officers and court officers, individuals among his specific intended stated targets in the specific settings [that] Frith said would cause him to act." (Doc. 16-1 at 2). Of course, when he *was* actually arrested by law-enforcement officers, Frith did not enact his fantasies. But

that encounter occurred without warning; post-release encounters with law-enforcement officers would occur predictably, affording Frith the opportunity to plan for them.

Frith proposes that the Court "should order his release under conditions of residence at his parents' home, continued employment, discontinuance of on-line gaming, drug abstention and testing, and mental health treatment," including ordering Frith to "take medication as prescribed by [his psychiatrist]." (Doc. 24 at 7–8). Unfortunately, given Frith's history, the Court cannot take the leap of faith required to conclude that a defendant in the throes of a years-long struggle with mental health will comply with conditions that directly contradict his deeply engrained habits and fly in the face of his powerful love of freedom.

For those reasons, having conducted an independent review of whether it is possible to craft conditions of release adequate to reasonably assure the safety of other people and the community into which Frith would be released, the Court determines that the Magistrate Judge properly found that pretrial detention of Frith is necessary.

## CONCLUSION

Accordingly, for the reasons stated above, the Motion to Revoke the Detention Order (Doc. 24) is **DENIED**.

**DONE** and **ORDERED** this the **23rd** day of **October 2026**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**